Case is Urey K. Tan, 2008-14-21. Thank you. Thank you. Please report. First I'd like to start with an apology. It appears that I left some pages out of the joint brief, and Mr. Lamarca pointed this out to me a few days ago. People provide those details. I apologize to the Court and to Mr. Lamarca for this oversight. Basically, we're here, I'm here, to ask you to interpret two words, claim construction, two words, liquid crystal, and comprises. Initially, when the... We've got all of your method claims and your specific claims to the vacillating method of detecting hot spots, but this is a very broad claim drawn to liquid crystals themselves. It's almost a genus of several liquid crystal, and the prior art reference lists a species within that. Isn't that anticipatory? Actually, the reference that was relied on was a mixture. But it lists K24, which is your fourth one now on your claim. That is correct. So if you have a species within a genus, it anticipates. Well, that's the issue, as to what is meant according to the inventor and this specification, liquid crystal. And it is our intention, we have said, and believe that liquid crystal, as used by the inventor, does not include mixtures. Now, the solicitor's office has taken a position that the specification does not preclude mixtures, but... Is there any way that your claim specifically precludes mixtures? Well, that comes to the term comprises. And when I started out in patent law, these were very easy words for me to understand. They were regarded as open-ended. However, recently, this court has said, not comprises, but comprising, which is a very close cousin, said in Dippin' Dots versus Moses, which I've decidedly... However, comprising is not a weasel word with which to abrogate claim limitations. And this came to the attention of... What's the claim limitation here that, in your view, is giving comprises its normal meaning abrogates? Well... Comprising normally means that it can be this plus other things, right? Ordinarily, it does. Okay, so what is it in the claim language here that overcomes that ordinary meaning? Well, first of all, my point is that liquid crystal is not a mixture. It was never disclosed or hinted at in the specification that it could include a mixture, even a tool of being made of liquid crystals. And the word comprising... The singular use of the word crystal overcomes the normal open-ended meaning of the word comprises. Well, a crystal can only be one, and the reference exposes a mixture. That's the position. It comprises... No, no, comprises is open-ended. Comprises means open-ended. That is correct. But it would be a liquid crystal, and maybe you would add alcohol to it, or you would add some solvent to it, or something else. As you have said... But not another biphenyl. Correct. And you repeated this recently in Board of Regents versus Ben's America 533 F3D 1362, in which you also spoke about it does not reach into every step and render every word or phrase therein open-ended. And this is our position, that yes, it comprises. You could include some other chemical or component, but it's not changing the named liquid crystals. But the Asadi... I've got Asadi right here in front of me. He's talking about an experimental method that utilizes pneumatic liquid crystal temperature detectors. We're talking about the same thing, and it lists precisely one of the claimed materials. Why isn't that incredibly revelatory? Because it's disposing it as a mixture, and there is nothing... If I had sued a company for using a mixture, they would be here arguing, what do you mean a mixture? That's not what the specification says. The specification disposes in each place as a single chemical. And yes, that reference, I agree. If you determine a claim construction that includes mixtures, then that reference validates it. But if you make a claim construction based upon the specification, I don't see... There is nothing... And as a matter of fact, the Swiss... But they're using a biphenyl for the same thing you used a biphenyl for. But they dispose it as a mixture with something else. The examples that they give is a mixture. They name it as combined with something else. And there's nothing in that disclosure, that reference, that says it could be used alone. Why would one conclude that you could use either one of these two chemicals that are mixed together alone? Anything further? No, Your Honor. I think we understand your point, Mr. Fanning. I have a way with the remainder of time, but I do what I can. Plenty of time for rebuttal. Thank you. Mr. Lamarck. May it please the Court, William Lamarck for the USPTO. It appears the Court understands the position of the government here. The Board, when they reviewed this claim, they did look at it as open-ended. They did review the claim, they reviewed the specification, and they looked at even the underlying prosecution history, the underlying patent, and couldn't find anywhere that the claim precluded additional items to be added or removed. Before the word comprises the claims, there's a scent liquid crystal. That's singular. Well... Doesn't that negate the following comprises of the word? I think that's one argument that's made by appellant, but I don't think that does work, because if you look through the prior, and even if you look at the pack itself, the term liquid crystal can often be used in a plural sense. So how about looking at the specification to help interpret the claim? Is there any disclosure of a mixture of crystals? No, there's not. There's not a disclosure of mixtures, but there's also not a prohibition of a mixture here. And if you look at the specification, we don't interpret claims only based on prohibitions in the specification, but the disclosure. I understand, Your Honor. But looking at the specification, it talks often about new use of liquid crystals, the use of a few dramatic liquid crystals. I'm just quickly looking through here. There's a lot of plural uses of crystals. And the specification also says that the specific particular liquid crystal material that you use is really not the key to their invention. The key to their invention here, Mr. Tain's invention, really is the method. And that's what Claims 1 through 10 are, which have been deemed allowable. Claims 1 through 10, no doubt, they go to this method, this unique method of fluctuating the temperature to get it just right so that they can use the liquid crystal material to have its behavior and its visual aspects to help them detect these hotspots. That's the crux of their invention. And if you look throughout the spec, you'll see a number of places where they say it's really not important which liquid crystal you pick. You can pick any number of liquid crystals, as long as you're familiar with something called the transition temperature. Each liquid crystal material has a slightly different transition temperature. And if you know what that is, it doesn't matter which one you use, our method will still work. Here, what you've got in the prior art is something very similar where they're using liquid crystal material, and they're using liquid crystal material and the fact that it has a transition temperature to help them do thermal mapping or to help them detect hot or cold spots. And the mixture portion, if you look at the Zadi reference, which Judge Rayer referenced multiple times, looking at the specification, it, of course, for enablement purposes, talks about using the K18 pneumatic liquid. And it goes on to say K18 pneumatic liquid at the top of column 4 is not the only chemical that works well. Now, a chemical could be a mixture, couldn't it? Absolutely, Your Honor. Now, so in other words, they're saying it doesn't matter what it is, as long as any chemical that works well for the claimed process, and if you look back at the summary of the invention, it's all process language, isn't it? Absolutely, Your Honor. Verse 1, 2, 3, 4, 5, at least through the first six paragraphs there, they start with the word a new process to a new process to a new process. And every point you just made, Your Honor, supports the point the government is trying to make here is that really what this patent is about is the process, the method of controlling temperature. And for that, you can use any chemical that works well for this invention. And exactly. And when you look at the prior reference, the Izzani reference, which you've already pointed to, and you see that they talk about K24 and M24, they even bring forth in Figure 1 in that reference showing how the mixture can vary in percentages. You can vary the percentage of K24 along a spectrum. And the purpose of varying the percentage is simply to modify the transition temperature. So a particular person in the field that wanted to get a liquid crystal material with a particular transition temperature, one way that they would be able to tweak that is by using a mixture. And that's exactly what they did in Izzani. And the board evaluated exactly like that. They looked at the specification and realized that the specification was focused really upon the temperature control method. It was not focused at all upon the type of liquid crystal material they used. In fact, it specifically teaches that you have the freedom to use many, many different types of liquid crystal materials with this temperature control method. And if Mr. Tannin wanted to limit it to one specific he might have used consisting of, right? That's one example. And what, if you heard Pellant's argument just here right before I stood up, I think what he said, what he sounded like he was referring to is if he would have used a language consisting essentially of. But that's not what he used. They used the word comprising. The PTO looks at that claim language. So Mark, this is a pretty strange claim. I've been practicing for the cabinet office for quite a long time. But I always thought new uses were not a proper form of claiming PTO. Has that changed? Well, to the extent that there's a question about the proper form of that claim, the board simply didn't address that. They didn't go beyond the fact that. That isn't an acceptable issue in the re-examination. Exactly. I don't know if you remember where it was, but it was in the board decision where I think they had a footnote and they said, look, we're not going to get into issues of 101. We're not going to get into issues of 112 with respect to this claim because in the re-exam, we're simply considering a claim versus a claim. But isn't PTO issuing claims these days to new uses? Well, I can't really say for sure. Well, I would rather not comment, Your Honor, without knowing for sure. But what I can say is the way the board treated this claim is they did treat it as really a listing of liquid crystal materials written in an alternative format. Another term would be in Marcouche format. And that would be used with a hotspot detecting method. Not this specific method, but just very broadly, a hotspot detecting method. And that's exactly what the Prior Art has. The Prior Art is a hotspot detecting method or thermomapping method using liquid crystal materials. And one of the liquid crystal materials listed in the Prior Art is found in this claim. And therefore, the board and the PTO believe that the claim is anticipated and should never be issued. And that's really our position, Your Honor. If there's no further questions, I'll sit down. You may sit down. Thank you. Thank you, Mr. DeMarco. Mr. Franklin, you have really rebuttaled what you just heard. I have two things to point out. First, it may be of interest that Mr. Tan came as an immigrant of Chinese language and with his little knowledge of English wrote and prosecuted this case. And so, while you look at the patent the way it is, historically, that's why it came out the way it did. And I don't know, but perhaps the patent examiner actually helped him a little with drafting this. So, the patent examiner was happy with it. Now, in the Prior Art, as addressed here, the words thermomapping and hotspot detection were used interchangeably. They're not. Okay? Thermomapping was a specific technique that was used in the Prior Art sometimes with pneumatic crystals to develop what you might say a geographical view of a substance so you could see the temperature transitions and basically, as the name describes, thermomapping. In the hotspot detection, you're only interested where the hotspots are. It's focused on the specific information and you heat up the semiconductor with the crystal on it. But you wouldn't lose this case as you began on how we construe crystal composite. Correct. Those two words. That's what it comes down to. But you see, Your Honor... Can you address the line at the top of column four of the patent, that says any chemical? A, B, C, pneumatic liquid crystal is not the only chemical. Not the only chemical. It's line two, column four. Does that mean that any of the others can be used or that there can be more than one in the composition? Well... Is the Azadi reference a chemical? I think you'd have to say yes. Yes, absolutely. So it fits right within this language, doesn't it? Could you give me the... I just did. Column four, line two. Okay. I have it in front of me now. This ought to be familiar to you. It is, Your Honor, but I want to read it now if I could take a chance on memory. That's true. The K8 pneumatic liquid crystal is not the only crystal that works well with the subvention. It's 100% true. You substitute a crystal for a chemical. Okay. Correct. That's why claim 11 lists... a chopping list of the chemicals that are appropriate. But the Azadi reference is also a chemical, isn't it? It's a mixture that's used and there is nothing in here that says that a liquid mixture could be used. But is there anything in there that says it's a disadvantage to using a mixture? No, Your Honor. There's nothing in here that says don't use a mixture. There's nothing in here that says you can use a mixture. But I... Just the last point, please. Claim 11 is for hot spot detection. If that concept of specific focus on hot spot detection didn't come into existence until it was invented by Mr. Tan. So, it... it impliedly... And you got claims to those methods, right? Correct. But when he says hot spot detection, it's true it's not the best format. But he was talking about what I'm presenting here. That's what I'm talking about. Thank you. Thank you very much.